UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRK RICHARD TABAYOYON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF VACAVILLE, et al.,<br><br>Defendants. | No. 2:19-cv-02022-KJM-KJN<br><br><br><br>ORDER |

Defendants City of Vacaville ("City"), City of Vacaville Police Chief John Carli ("Chief Carli"), City of Vacaville Police Officer Josiah Alderton ("Officer Alderton"), City of Vacaville Police Officer Danya Hardwick ("Officer Hardwick") and City of Vacaville Police Officer Kenneth Welter ("Officer Welter") (collectively "defendants") move to dismiss plaintiff Kirk Tabayoyon's first and fifth claims. Mot. to Dismiss ("MTD"), ECF No. 10, at 6-7. Plaintiff opposes, Opp'n, ECF No. 19, and defendants have replied, Reply, ECF No. 21. The court heard oral argument by videoconference on September 4, 2020, with Justin Tabayoyon appearing for plaintiff and Henry Bernstein and Richard Osman appearing for defendants. For the reasons below, the court GRANTS defendants' motion to dismiss.

/////

/////

1

I.      FACTUAL ALLEGATIONS AND CLAIMS

On or about October 8, 2017, plaintiff's daughter, Kayla Hansen, called the Vacaville Police Department and alleged plaintiff had pushed her, but she said she did not have any injuries. First Am. Compl. ("FAC") ¶ 13, ECF No. 9. In response to this call, Officer Hardwick, Officer Alderton and other officers drove to plaintiff's home and found plaintiff shirtless in his driveway. *Id.* ¶¶ 13–16. Officer Hardwick asked plaintiff whether he pushed his daughter. *Id.* ¶ 15. Plaintiff "stood calmly in one spot" and denied pushing his daughter. *Id.* ¶ 16. He then informed the officers his mother was inside the home, and she could speak about what happened. *Id.*

Plaintiff alleges that while having "a consensual and voluntary conversation" with Officer Hardwick, one or more officers approached and entered the front door of his home, at which point he said: "hey you can't go in my house." *Id.* ¶ 18. After saying this, plaintiff claims to have taken two steps away from Officer Hardwick, while "exercising his constitutional rights to object to a warrantless search of his home absent exigent circumstances." *Id.* Because he had stepped away from Officer Hardwick, plaintiff alleges "no reasonable officer would believe use of force was reasonable or necessary." *Id.* Despite plaintiff's moving away, Officer Hardwick put herself in plaintiff's path and "reached out with her hand and made physical contact" with his chest. *Id.* ¶ 21. Plaintiff then moved Officer Hardwick's hand away from his chest "in a slow, circular sweeping motion" using a self-defense technique, which he learned from his time in the United States Army. *Id.* Another officer then told plaintiff to "stay where you are" and plaintiff obliged; he claims Officer Alderton then attacked him from behind. *Id.*

Plaintiff alleges none of the circumstances on that day necessitated Officer Alderton's battery. *Id.* ¶ 23. Plaintiff was unarmed, he had not advanced on Officer Hardwick, and Officer Hardwick had not arrested him or asked him to place his hands in the air. *Id.* Officer Alderton's actions caused plaintiff to be "propelled" onto the asphalt of his driveway. *Id.* Once plaintiff was on the ground, Officer Hardwick, Officer Alderton and the other officers placed their knees on plaintiff and applied their body weight onto his neck, which caused plaintiff to bleed. *Id.* ¶ 26.

2

Throughout the incident, defendants exhibited a "punitive and condescending mindset." *Id.* ¶ 27.  Plaintiff claims that as Officer Alderton approached him from behind, Officer Hardwick leaned out of the way and said: "okay there we go." *Id.*  He also alleges Officer Alderton and Officer Hardwick smiled and smirked throughout the altercation. *Id.*  Plaintiff experienced severe injuries and so the officers took him to Kaiser Emergency Department in Vacaville; plaintiff claims he remained in handcuffs throughout the emergency room visit. *Id.* ¶ 28.

On October 5, 2019, plaintiff filed suit against defendants.  Compl., ECF No. 1.  On December 31, 2019, plaintiff filed his amended complaint. *See generally* FAC.  He names as defendants the City, Chief Carli, Officer Alderton, Officer Hardwick, Officer Welter.[1] *Id.* ¶¶ 3–11.  Plaintiff alleges the City is a public entity established by the laws and the Constitution of the State of California; Chief Carli is responsible for the employment, training, supervision and control of all officers of the Vacaville Police Department; and Officer Welter was employed by the City as a police officer. *Id.* ¶¶ 4, 7–8.

Plaintiff makes six claims in the operative complaint: (1) municipal and supervisory liability for unconstitutional use of excessive force under 42 U.S.C. § 1983, against the City, Chief Carli and Officer Welter, *id.* ¶¶ 39–61; (2) individual liability for unconstitutional use of excessive force under 42 U.S.C. § 1983 against Officers Alderton and Hardwick, *id.* ¶¶ 62–67; (3) battery against Officers Alderton and Hardwick, *id.* ¶¶ 68–74; (4) intentional infliction of emotional distress against Officer Alderton, *id.* ¶¶ 75–81; (5) negligence against all defendants except the City and Officer Welter, *id.* ¶¶ 82–94; and (6) violation of plaintiff's rights under California's Bane Civil Rights Act against Officers Alderton and Hardwick, *id.* ¶¶ 95–98.

---

[1] Plaintiff also names several Doe defendants.  While Doe defendants are disfavored in federal court, if a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642.  The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint.  Fed. R. Civ. P. 4(m).

In the instant motion, defendants move to dismiss plaintiff's first cause of action and his fifth cause of action, the latter as against Chief Carli. MTD at 7. Defendants argue the first cause of action fails against the City because plaintiff does not allege sufficient facts pointing to a widespread custom or City practice that caused a deprivation of plaintiff's constitutional rights. *Id.* at 9–12. Further, they argue, plaintiff is unable to demonstrate either that an "authorized policymaker knew of unconstitutional conduct" prior to its occurrence, *id.* at 12, or that the City's training programs were so clearly inadequate they would result in unconstitutional conduct. *Id.* at 14–15. With regard to Chief Carli and Officer Welter, defendants argue the first cause of action does not rest on factual allegations sufficient to state the supervisory liability claims. *Id.* 15–16. Lastly, defendants argue plaintiff has failed to state a claim of negligence against Chief Carli in the fifth cause of action, because he has not alleged sufficient facts demonstrating Chief Carli was the actual or proximate cause of plaintiff's injuries. *Id.* at 16–17.

II.     LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the

1 interplay between the factual allegations of the complaint and the dispositive issues of law in the
2 action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

3       In making this context-specific evaluation, this court must construe the complaint
4 in the light most favorable to the plaintiff and accept as true the factual allegations of the
5 complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal
6 conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) quoted
7 in *Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to
8 judicial notice" or to material attached to or incorporated by reference into the complaint.
9 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). A court's
10 consideration of documents attached to a complaint or incorporated by reference or matter of
11 judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United*
12 *States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d
13 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,
14 980 (9th Cir. 2002) (noting though a court may look beyond pleadings on a motion to dismiss, it
15 generally is limited to face of the complaint on 12(b)(6) motion).

16 III. <u>DISCUSSION</u>

17     A. <u>*Monell* Municipal Liability (First Claim): City of Vacaville</u>

18       In their motion to dismiss, defendants argue plaintiff has failed to plead sufficient
19 facts to allege an unconstitutional pattern or practice, ratification of an unconstitutional act or
20 inadequate training. MTD at 9–16. In opposition, plaintiff argues he has sufficiently alleged an
21 unconstitutional custom, policy or practice of using excessive force; specifically, he says that by
22 relying on information and belief, he has met applicable pleading standards. Opp'n at 8–10.

23       Under *Monell*, municipalities "are responsible only for their *own* illegal acts,"
24 *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (citations, internal quotation
25 marks omitted). "They are not vicariously liable . . . for their employees' actions." *Id.* (citations
26 omitted). To successfully establish *Monell* liability, a plaintiff ultimately must show "'(1) that
27 [he or she] possessed a constitutional right of which [he or she] was deprived; (2) that the
28 municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

Prior to the Supreme Court's decisions in *Twombly* and *Iqbal*, *supra*, a claim for county liability could "withstand a motion to dismiss 'even if . . . based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988) (citing *Shah v. Cnty. of L.A. Intelligence & Coordination Unit*, 797 F.2d 743, 747 (9th Cir. 1986)). In light of *Twombly* and *Iqbal*, however, the Ninth Circuit has articulated a two-part test for use in evaluating allegations in a complaint or counterclaim:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2012). This court thus considers whether to dismiss plaintiff's claim of municipal liability under this heightened pleading standard. *See Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) ("*Iqbal* has made clear that conclusory, 'threadbare' allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss . . . . In light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable.").

1. Policy or Custom

"Official . . . policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). "[A] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the

6

errant municipal officers were not discharged or reprimanded." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (citations, internal quotation marks omitted). "[E]vidence of inaction—specifically failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." *Id.* at 1234 n.8 (emphasis omitted).

"To survive a motion to dismiss, 'a bare allegation that government officials' conduct conformed to some unidentified government policy or custom' is insufficient; instead, plaintiffs' complaint must include 'factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Shelley v. Cty. of San Joaquin,* 954 F. Supp. 2d 999, 1009 (E.D. Cal. 2013) (quoting *AE ex rel. Hernandez v. Cty. of Tulare,* 666 F.3d at 637).

Here, plaintiff's complaint does not include the factual allegations necessary to support his claim that the City has an unconstitutional policy or custom of allowing its police officers to use excessive force. Plaintiff alleges merely that the City "has a significant prior and subsequent history of allowing its law enforcement officers to violate the rights of people […] amounting to an official policy of approval and tolerance of that unlawful and unconstitutional conduct." FAC ¶ 46. He also alleges the City and other defendants "maintained policies or customs exhibiting deliberate indifference to the constitutional rights of the citizens of CITY who were victims of excessive force." *Id.* ¶ 47.

In arguing his allegations are sufficient, plaintiff points to a previous case before this court and against the City, *Galvan v. City of Vacaville*, No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896 (E.D. Cal. Sept. 5, 2018) (granting in part and denying in part defendants' motion to dismiss plaintiff's excessive force, failure to intercede, *Monell* claims and supervisory liability claims). In *Galvan*, plaintiff alleged police officers from the City "silently crept up […] from behind" and then "used physical force on Galvan [plaintiff] without warning." *Galvan*, 2018 WL 4214896, at *1. Plaintiff argues these are similar to the allegations here, in which Officer Alderton tackled him from behind. FAC ¶ 23. Plaintiff points out additional comparisons too: in

7

both cases plaintiffs were charged with a violation of California Penal Code § 148(a), allegedly "to cover up the excessive force and preclude civil liability." *Id.* ¶ 31.

But with a closer inspection of the factual allegations in each case, the comparisons fade. In *Galvan,* the plaintiff not only was grabbed from behind, but brought down with a chokehold, held on the ground while an officer repeatedly punched him in the face, and ultimately lost consciousness after being slammed into the concrete. *Galvan,* 2018 WL 4214896, at *1. Officers then turned off their body cameras, while one bragged to another officer that he had "fucking socked him in the face like four times." *Id.* That same officer was not disciplined or retrained; he had been named Officer of the Year the year before. *Id.* While the facts as alleged here are serious, they are not similarly egregious. In this case, plaintiff was tackled from behind, after putting his hands on one of the officers, and "shoved…with tremendous force" so he fell on his face on the driveway. FAC ¶ 23. Officers then placed their knees and body weight on him so that his "face, head, and neck" grinded into the asphalt. *Id.* ¶ 26. When he was arrested he was told "you don't put your hands on police officers." *Id.* ¶ 27. In sum, the similarities between this case and *Galvan* do not alone support allegations of "widespread practices or evidence of repeated constitutional violations" such that the court may infer an unconstitutional policy or custom. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v.* Gates, 99 F.3d 911, 918 (9th Cir. 1996), *modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

The court here follows other courts in this district, which have inferred an unconstitutional policy or custom when the plaintiff provides multiple incidents of prior, similar conduct, as opposed to the one previous incident plaintiff alleges here. *See Estate of Alejandro Sanchez v. Cty. of Stanislaus*, No. 1:18-CV-0977-DAD-BAM, 2019 WL 1745868 (E.D. Cal. Apr. 18, 2019) (holding plaintiffs' complaint includes "sufficient factual allegations" to plausibly allege the existence of a policy or custom of excessive force when plaintiffs pointed to at least three prior cases involving similar facts and eventual settlement); *see also Lemus v. Cty. of*

8


1  *Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016),

2  *aff'd*, 711 F. App'x 859 (9th Cir. 2017) ("[W]here more than a few incidents are alleged, the

3  determination appears to require a fully-developed factual record."). Without additional

4  allegations of similar, prior incidents, plaintiff has not demonstrated he is entitled to relief under

5  an unconstitutional custom or policy theory of liability from *Monell*.

6        Accordingly, the court GRANTS defendants' motion to dismiss plaintiff's

7  municipal liability claim against the City for an unconstitutional custom or policy, but with leave

8  to amend if amendment is possible subject to the Federal Rule of Civil Procedure 11.

9        2.    <u>Ratification</u>

10        Defendants also assert plaintiff has failed to allege a ratification theory of liability

11  under *Monell*. MTD at 12–14; Reply at 11–12. Specifically, defendants state plaintiff's

12  complaint "fails to show that any *authorized policymaker* knew of unconstitutional conduct […]

13  and approved [it]. *Id.* at 12–13 (emphasis in original). Plaintiff does not address defendants'

14  arguments regarding the ratification theory in his opposition; he instead only points the court to

15  certain paragraphs in his complaint on this issue. Opp'n at 9 (citing FAC ¶¶ 31–32, 35–36, 41–

16  44, 55, 57, 61).

17        A plaintiff may claim *Monell* liability where an "official with final policy-making

18  authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*

19  *v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). "A policymaker's knowledge of an

20  unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231,

21  1239 (9th Cir. 1999). Furthermore, "a policymaker's mere refusal to overrule a subordinate's

22  completed act does not constitute approval." *Id.* Rather, ratification requires the authorized

23  policymaker to make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. Ratification

24  "and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post

25  event conduct, including its conduct in an investigation of the incident." *Dorger v. City of Napa*,

26  No. 12-cv-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (emphasis in original)

27  (citing *Henry v. Cty. of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997)). In addition to establishing

28  ratification occurred, a plaintiff must also show that the ratification was (1) the cause in fact, and

(2) the proximate cause of the constitutional deprivation. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

### a) Final Policymaker

Whether an official is a policymaker for *Monell* purposes is a question governed by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "'Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

Here, plaintiff has not identified a final policymaker. Instead, plaintiff pleads unconstitutional actions or omissions were "ratified by final policymakers" for the City. FAC ¶ 41. Although plaintiff later alleges "details of this incident have been revealed to the authorized policy makers with the CITY and VVPD including CHIEF," *id.* ¶ 42, plaintiff has not identified who served as a final policymaker under state law. *Compare* FAC ¶¶ 41–44, *with Larez v. City of Los Angeles*, 946 F.2d 630, 633, 646 (9th Cir. 1991) (observing from record that chief of police was "an official policymaker for the City on police matters"). Plaintiff has not sufficiently pleaded this essential aspect of a ratification theory.

### b) Ratification of the Basis for the Actions

A plaintiff must also plead that a final policymaker both "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346–47. As noted above, ratification requires the authorized policymaker to make a "conscious, affirmative choice." *Id.* at 1347. For example, in *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1053 (9th Cir. 2013), the plaintiff alleged the chief of police delayed a salary increase for plaintiff in retaliation for plaintiff's exercising his First Amendment rights. The Ninth Circuit concluded the city manager, not the chief of police, "was the city's final policymaker," where the manager approved the chief of police's decision to delay. *Id.* at 1066. And plaintiff has not alleged the city manager "knew that the decision was in retaliation for protected speech" or that the city manager "ratified the decision despite such knowledge." *Id.*

Here, plaintiff's allegations are essentially legal conclusions. Though plaintiff has alleged that Chief Carli engaged in conduct reflecting a policy or practice of "ratif[ying] the unconstitutional acts of the individual defendant officers" and "approved of the excessive use of force," *id.* ¶ 43, plaintiff has not sufficiently pleaded facts showing a final policymaker's approval or ratification involving a "conscious, affirmative choice" and knowledge of the excessive force used by defendant officers. *See Gillette*, 979 F.3d at 1347. Plaintiff does allege Chief Carli dismissed plaintiff's internal complaint, while stating his "inquiry revealed no evidence of misconduct on the part of the officer(s)." FAC ¶ 35. Ratification requires more than mere approval, however, and here Chief Carli's failure to discipline the officers is not sufficient by itself to constitute ratification of their actions. *See Ellins,* 710 F.3d at 1066.

The court GRANTS defendants' motion to dismiss plaintiff's municipal liability cause of action based on a ratification theory of liability, but with leave to amend to the extent possible.

### 3. Failure to Train or Supervise

Defendants argue plaintiff also fails to state a municipal liability claim based on inadequate training. MTD at 14–15; Reply at 13–14. They contend plaintiff's complaint "is devoid of facts showing what the CITY's training programs were, prior similar acts or any basis to show the need for more or different training was so obvious, and the alleged inadequacy so likely to result in constitutional violations." MTD at 14. Plaintiff asserts simply he pleaded "surplus facts" to state a claim based on inadequate training against the City and then points the court to those parts of his complaint. Opp'n at 9 (citing FAC ¶¶ 36,38,40,43, 46, 53, 54, 56, 58-61).

To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to "deliberate indifference" to a constitutional right. This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the

1   need." *City of Canton v. Harris,* 489 U.S. 378, 390 (1989).  For example, if police actions in the
2   course of arresting fleeing felons "so often violate constitutional rights that the need for further
3   training must have been plainly obvious to the city policymakers," then the city's failure to train
4   may constitute "deliberate indifference." *Id.* at 390 n.10 (addressing policy allowing police shift
5   commanders discretion to decide whether detained person required medical care, without special
6   training to make the determination, in case involving woman clearly suffering a variety of mental
7   health issues who did not receive timely care).  "Only where a failure to train reflects a
8   'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—
9   can a city be liable for such a failure under § 1983." *Id.* at 389.  And only under such
10  circumstances does the failure to train constitute "a policy for which the city is responsible, and
11  for which the city may be held liable if it actually causes injury." *Id.* at 390.

12          Here, plaintiff has alleged a pattern of defendants' having ignored prior instances
13  of constitutional violations although "the need for further training was plainly obvious," saying
14  defendants "were deliberately indifferent to the need for further training." FAC ¶ 56.  To
15  demonstrate defendants' deliberate indifference, plaintiff alleges defendants approved and
16  reviewed reports from officers while "knowing the use of force and/or the other actions of the
17  officers was unconstitutional." *Id.* ¶ 56.  Plaintiff has not, however, supported these allegations
18  with details of defendants' knowingly reviewing reports describing unconstitutional actions by
19  employees. *See Coe v. Schaeffer,* No. 2:13-CV-00432-KJM-CK, 2014 WL 1513305, at *4 (E.D.
20  Cal. Apr. 11, 2014) (denying motion to dismiss second amended complaint where plaintiffs
21  alleged in part "defendants knew or should have known of complaints against [defendant officer]
22  for similar conduct as in this case 'because other citizens had made verbal and written complaints
23  against [defendant officer]' . . . and defendants told [defendant officer] Schaeffer that despite the
24  complaints, only 'a perfunctory investigation would be performed,' Schaeffer 'would be
25  exonerated,' and she would not be punished" in contrast to the previously dismissed complaint's
26  "single allegation of a 'history of misconduct'"); *Malott v. Placer Cty.*, No. 2:14-CV-1040-KJM-
27  EFB, 2014 WL 6469125, at *7 (E.D. Cal. Nov. 17, 2014) ("[P]laintiff has not identified any
28  policies regarding supervision and training, explained how they are deficient, or suggested how

they led to his injuries."). These allegations, which do not even identify when purportedly similar conduct occurred, do not reveal a "pattern of similar constitutional violations by untrained employees." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quoting *Connick*, 141 S. Ct. at 160 (additional citations omitted)). To plead such a pattern, plaintiff must provide more than "isolated incidents of criminal wrongdoing." *Id.*

Plaintiff here does not point the court to any specific incidents in which defendants "approved and reviewed reports from subordinate officers," despite those reports describing unconstitutional actions. As a result, plaintiff has not stated a plausible claim for relief based on inadequate training.

The court GRANTS defendants' motion to dismiss plaintiff's municipal liability claim against the City for failure to train or supervise, but with leave to amend if possible.

B. <u>Supervisory Liability (First Claim): Chief Carli and Officer Welter</u>

Defendants argue plaintiffs also fail to plead sufficient facts to proceed on their claim Chief Carli and Officer Welter should face supervisory liability under 42 U.S.C. § 1983. MTD at 15–16. In opposition here as well, plaintiff simply points to paragraphs in the operative complaint, which he contends provide sufficient facts to state a supervisory liability claim. Opp'n at 9 (citing to FAC ¶¶ 4, 36, 50-69).

"A supervisory official is liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citing *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018)). The requisite causal connection is established "by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* (alteration in original) (quoting *Starr,* 652 F.3d at 1207–08). Therefore, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional

deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998)).

          1.      <u>Chief Carli</u>

The operative complaint is devoid of factual allegations that Chief Carli was personally involved in, knew of or refused to interject himself in the actions of his subordinate officers in a way that caused the infringement of plaintiff's constitutional rights. Plaintiff does allege Chief Carli created a "policy and practice to deny any wrongdoing and fail to discipline law enforcement officers for their wrongdoings," and failed to ensure proper training and supervision of officers regarding the correct level of force to use in responding to calls for service. FAC ¶¶ 36, 50. These allegations are conclusory, with plaintiff pleading only in the most general terms that Chief Carli knew or should have known his subordinate officers engaged in conduct giving rise to the deprivations plaintiff claims here.

Plaintiff does allege he received a letter on or about March 22, 2018, which Chief Carli signed, and which dismissed plaintiff's complaint because the "inquiry revealed no evidence of misconduct on the part of the officer(s)." *Id.* ¶ 35. However, pointing to a signed letter dismissing plaintiff's complaint does not explain whether or how Chief Carli was involved in the alleged incident or failed to "terminate a series of acts by others." *See OSU Student All. v. Ray*, 699 F.3d 1053, 1070 (9th Cir. 2012) ("*Iqbal* emphasizes that a constitutional tort plaintiff must allege that every government defendant—supervisor or subordinate—acted with the state of mind required by the underlying constitutional provision.").

The allegations lack the factual support necessary for a viable supervisory liability claim to survive dismissal at this stage. The prisoner civil rights action of *Quezada v. McDowell* is instructive  In *Quezada*, the court denied defendants' motion to dismiss plaintiff's supervisory liability claim where plaintiff alleged he repeatedly notified the supervising defendant about subordinate defendants' "systematic retaliations against Plaintiff, yet [the supervisor] failed to act." No. 5:18-CV-00251-VBF-MAA, 2019 WL 3806406, at *7 (C.D. Cal. July 10, 2019), *report and recommendation adopted*, No. EDCV 18-00251-VBF-MAA, 2019 WL 3802190 (C.D. Cal. Aug. 12, 2019). Plaintiff also alleged the supervisor's failure to act led to retaliation against him

because it further emboldened the subordinate's retaliatory behavior.  *Id.*  Finally, plaintiff cited a specific instance of defendant's refusal to reprimand his subordinates after plaintiff notified defendant and his attorney of the offending conduct.  *Id.*; *see also Reed v. Paramo*, No. 18-CV-361 JLS (LL), 2019 WL 398339, at *10 (S.D. Cal. Jan. 31, 2019) (finding plaintiff sufficiently pled supervisory liability claim where plaintiff and others had lodged complaints against subordinate defendant's retaliatory behavior, and defendant's refusal to act created policy of allowing retaliatory conduct by its officers).

The complaint, at this stage, contains little more than bare recitals and conclusory allegations of Chief Carli's connection to the alleged wrongful conduct.  The court GRANTS defendants' motion to dismiss the supervisory liability claim against Chief Carli, with leave to amend.

### 2. Officer Welter

Whether plaintiff has included sufficient factual allegations to pursue supervisory liability against Officer Welter is less clear than plaintiff's utter failure with respect to Chief Carli.  Plaintiff's complaint lacks factual allegations regarding Officer Welter's personal involvement in a way that deprived plaintiff of his constitutional rights; the complaint does not allege Officer Welter was present at plaintiff's home on October 8, 2017, when defendants allegedly used excessive force against him.  However, plaintiff has pled a causal connection between Officer Welter's "action and omissions" and constitutional deprivations effected by the responding officers with greater particularity.

Specifically, plaintiff's supervisory liability claim against Officer Welter rests on Officer Welter's role as the direct supervisor of Officers Hardwick and Alderton. FAC ¶ 32.  In that capacity, Officer Welter approved Officers Hardwick and Alderton's summary of the incident on or about "October 7 [sic], 2017," even after Welter "purposely and/or negligently failed to investigate the accuracy of the reports," "knowing the reports contained false information." *Id.*  To support his allegation Officer Welter knew the report contained false information, plaintiff claims the following: (1) plaintiff "personally reported to WELTER during an interview on the date of the incident that he had been assaulted," and; (2) several officers wore

body cameras containing footage from October 8, 2017, which showed plaintiff did not "advance" on Officer Hardwick. *Id.* ¶ 31.

Taking these allegations as true, they support an inference Officer Welter should have reviewed Officers Hardwick and Alderton's description of their actions skeptically. Plaintiff's allegations of his conversation with Officer Welter, along with existence of body camera footage, also provide some basis for inferring Officer Welter knew or should have known about the alleged constitutional deprivations. These factual allegations are more specific than those attempting to connect Chief Carli to the constitutional deprivations by virtue of the Chief's signing the dismissal of plaintiff's internal police complaint. At the same time, as defendants argue, by themselves, facts showing Officer Welter's "alleged wrongful after-the-fact approval of the officers' incident reports" do not sufficiently plead a "causal connection" to the alleged constitutional violation, "which was already completed" when Officer Welter became aware of the incident. Reply at 14 (citing FAC ¶¶ 31–32 and *Starr*, 652 F.3d at 1207, among other cases). Rather, plaintiff must also plead facts demonstrating the supervisor had knowledge of similar constitutional violations prior to the constitutional violations at issue in the case, and yet failed to act. Plaintiff has not provided such allegations here.

The court GRANTS defendants' motion to dismiss the supervisory liability claim against Officer Welter, with leave to amend if possible.

C.   Negligence (Fifth Claim): Chief Carli

Lastly, defendants argue plaintiff failed to state a claim of negligence against Chief Carli because he did not plead any facts demonstrating Chief Carli was the actual or proximate cause of plaintiff's injuries. MTD at 16; Reply at 15. In response, plaintiff contends Chief Carli's own actions and omissions support a direct negligence claim. Opp'n at 10 (citing FAC ¶¶ 4, 36, 50–69).

With claims of negligence, a plaintiff ultimately must establish "[t]he traditional elements of duty, breach of duty, causation and damages." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). "Whether a defendant owes a duty of care is a question of law." *Id.* On causation, negligence under California law involves "proximate cause," which is "'a policy-based

16

1  legal filter on but for causation' that courts apply 'to those more or less undefined considerations
2  which limit liability even where the fact of causation is clearly established.'" *Vons Companies,*
3  *Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 464 (1996) (citations omitted).
4      As set forth above with respect to plaintiff's supervisory liability claims against
5  Chief Carli, plaintiff does not provide factual allegations sufficient to show Chief Carli's personal
6  involvement in the alleged deprivations or a causal connection between his alleged acts or
7  omissions and the alleged deprivations. Similarly with his negligence claim, plaintiff has failed
8  to plead Chief Carli's alleged actions or omissions were the proximate cause of plaintiff's alleged
9  injuries.
10     The court GRANTS defendants' motion to dismiss plaintiff's negligence claim
11 against Chief Carli, with leave to amend if possible.
12 IV.   <u>CONCLUSION</u>
13     For the foregoing reasons, the court orders defendants' motion to dismiss is
14 GRANTED, with the following claims dismissed as set forth below:
15     1. Municipal liability claim against the City based on an unconstitutional custom
16        or practice, with leave to amend (claim 1);
17     2. Municipal liability claim against the City, based on a ratification theory of
18        liability, with leave to amend (claim 1);
19     3. Municipal liability claim against the City, based on a failure to train its
20        personnel, with leave to amend (claim 1);
21     4. Supervisory liability claim against Chief Carli, with leave to amend (claim 1);
22     5. Supervisory liability claim against Officer Welter, with leave to amend (claim
23        1); and
24     6. Negligence claim against Chief Carli, with leave to amend (claim 5).
25     Plaintiff shall have 21 days from the date of this order to file any amended
26 complaint.
27 /////
28 /////

1   This order resolves ECF No. 10.

2   IT IS SO ORDERED.

3   DATED: January 11, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE